IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 6:21-cr-745 |
| | ) | 18 U.S.C. § 371 |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| | ) | |
| DANIEL MCCOLLUM | ) | INFORMATION |

THE U.S. ATTORNEY CHARGES:

1. That beginning at a date unknown to the Grand Jury but from at least in or about January 2014, and continuing thereafter until the spring of 2019, in the District of South Carolina and elsewhere, the defendant, DANIEL MCCOLLUM, and others known and unknown to the U.S. Attorney, knowingly and willfully did combine, conspire, confederate, agree and have a tacit understanding with each other, to:

(a) violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a federal healthcare program; and

(b) to violate Title 18, United States Code, Section 1347 by knowingly and willfully executing a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, TRICARE, Medicaid, and other health care benefit providers, and to obtain, by means of material false and fraudulent

pretenses, representations, and promises, money owned by and under the custody and control of Medicare, TRICARE, Medicaid, and other health care benefit programs, in connection with the delivery of and payment for health care benefits and services in regard to the prescribing of lidocaine as described herein.

## MANNER AND MEANS

2. DANIEL MCCOLLUM owned, operated, directed, or had a financial interest in a network of pain management clinics, urine drug testing ("UDT") laboratories, and other businesses related to pain management. McCollum's businesses included Oaktree Medical Centre, P.C. ("Oaktree"); Labsource, LLC ("Labsource"); Pain Management Associates of the Carolinas, LLC ("PMA"); Exigo Pharmaceuticals, LLC ("Exigo"); and Coffey Family Medical Center ("Coffey") (collectively "the McCollum entities").

3. Labsource, at DANIEL MCCOLLUM's direction, utilized kickbacks – in the form of a direct bill program – as a means to grow its business.

4. Under the direct bill program – sometimes referred to as the "client bill" program – Labsource provided referring providers with an opportunity to earn revenue generated from their commercially-insured UDT referrals as an inducement for those providers to refer all of their UDT, specifically including testing for Medicare, Medicaid and TRICARE beneficiaries, to Labsource.

5. Labsource's direct bill program functioned as follows:

   a. A participating provider – either an individual physician or a clinic – would execute a direct bill agreement with Labsource.

   b. A participating provider would then pay Labsource a modest negotiated fee (typically between $200 and $250) for each commercially-insured UDT order referred to Labsource.

      c.      Labsource, in turn, would permit the provider to stand in Labsource's shoes and bill the commercial insurer for the UDT performed by Labsource, and retain as profit the difference between the commercial insurance reimbursement and the negotiated fee paid to Labsource.

      d.      However, Labsource would bill and retain all of the revenue generated by Medicare, Medicaid and TRICARE.

6.      By permitting and encouraging the provider to bill the commercial insurer for the UDT, Labsource, in essence, paid a kickback to the provider for referral of the provider's Medicare, Medicaid and TRICARE UDT.

7.      Further, DANIEL MCCOLLUM and others devised a scheme in order to generate revenue from insurance reimbursement associated with lidocaine cream. He and others allowed individuals without prescriptive privileges to order lidocaine cream for patients after this was directed by a co-conspirator --often without the knowledge or approval of the patients' health care providers.

8.      To further drive lidocaine prescriptions, DANIEL MCCOLLUM and others directed McCollum entity employees to review patient records for payor information to determine which insurance providers would pay for the lidocaine cream. Based on this analysis, McCollum entity providers began receiving daily memoranda indicating which patients had appointments that day and whether or not their insurance would cover the lidocaine cream. DANIEL MCCOLLUM and others encouraged McCollum entity providers to prescribe lidocaine cream for a number of patients with qualifying insurance regardless of medical necessity.

## OVERT ACTS

9. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of South Carolina and elsewhere:

a. On or about January 12, 2018, DANIEL MCCOLLUM sent an email entitled "Lidocaine Missed Prescriptions" to McCollum entity providers.

b. On or about January 22, 2018, DANIEL MCCOLLUM sent an email to "DR" and "MB" about lidocaine inventory.

c. In or about August 2014, DANIEL MCCOLLUM attended a training session for direct billing sales and marketing.

All in violation of Title 18, United States Code, Section 371.

*M. Rhett DeHart*
M. RHETT DEHART   (WJW/jl)
ACTING UNITED STATES ATTORNEY

4